## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 20-21988-CIV-COOKE/GOODMAN

ANGELA SALAS, et al.,

    Plaintiffs,

v.

BOSTON SCIENTIFIC CORPORATION,

    Defendant.

_____/

### REPORT AND RECOMMENDATIONS ON DEFENDANT'S
### MOTION REGARDING CHOICE OF LAW FOR PUNITIVE DAMAGES

Defendant Boston Scientific Corporation ("BSC") filed a motion regarding choice of law for punitive damages. [ECF No. 66]. BSC argues that Massachusetts law should apply, which would bar punitive damages here. *Id.* Florida law allows for punitive damages. Plaintiffs Angela Salas and Ricardo Salas ("Salas") filed a response in opposition, arguing that BSC's motion is a time-barred submission and fails on the merits. [ECF No. 85]. BSC filed a reply. [ECF No. 89]. Both parties filed supplemental authority on the issue. [ECF Nos. 81; 90; 91]. United States District Judge Marcia G. Cooke referred the motion regarding choice of law to the Undersigned. [ECF No. 68].

For the reasons stated below, the Undersigned **respectfully recommends** that the District Court **deny** BSC's motion regarding choice of law for punitive damages. The

Undersigned finds that, although not a time-barred motion, BSC's request fails on the merits because Florida has a more-significant relationship to the claim and to the issue of punitive damages here.

## I.     Background

This lawsuit arises from BSC's allegedly defective surgical mesh, which was implanted into Plaintiff Angela Salas to treat her pelvic organ prolapse on September 26, 2011 at Baptist Hospital in Miami, Florida. [ECF No. 1, p. 4]. This action was directly filed in the United States District Court for the Southern District of West Virginia, and it is related to Multidistrict Litigation 2326, 12-md-2326. *See In Re: Bos. Sci. Corp., Repair Sys. Prods. Liab. Lit.*, MDL No. 2326 (S.D. W. Va.); [ECF No. 36, p. 1]. This case was one of seven MDLs assigned by the Judicial Panel on Multidistrict Litigation to Joseph R. Goodwin, United States District Judge for the Southern District of West Virginia. [ECF No. 36, p. 1].

On April 28, 2020, Judge Goodwin entered a transfer order providing that this action was ready to be transferred to the appropriate jurisdiction (Southern District of Florida). *Id.* Judge Goodwin also noted in the order that "the time to conduct discovery is complete, . . . the parties have had time to file dispositive and *Daubert* motions, responses, and replies, . . . [and] I urge the receiving court to immediately set these cases for trial without reopening discovery." *Id.*

On July 13, 2020, Judge Cooke entered a scheduling order, setting the case for a December 7, 2020 trial date. [ECF No. 45]. On October 22, 2020, BSC filed its motion

regarding choice of law for punitive damages. [ECF No. 66]. The same day, BSC filed a motion to bifurcate the determination of punitive damages from all other issues (in the event the Court denies BSC's motion for the application of Massachusetts law on punitive damages). [ECF No. 67].

Due to the COVID-19 pandemic, the trial date was subsequently reset for June 21, 2021. [ECF No. 93].

## II. Applicable Legal Standards and Analysis

BSC asks this Court to determine that, under Florida's choice-of-law rules, punitive damages are governed by Massachusetts law (which evidently would not allow for punitive damages here).[1] [ECF No. 85]. BSC argues that punitive damages are governed by the law of the state where the defendant is headquartered and where it made its decisions concerning the design, labeling, marketing, and distribution of the product at issue. *Id.*

Salas argues that (1) BSC's motion is untimely and functions as an improper second motion for partial summary judgment, (2) BSC should be estopped from arguing

---

[1]   BSC points out that it is not seeking a determination from the Court in its motion as to whether punitive damages are barred here. [ECF No. 89, p. 2, n. 1]. But Massachusetts law "require[es] punitive-damages plaintiffs (1) to assert a statutory (rather than a common-law) cause of action and (2) to send their adversaries a pre-suit demand letter." *Goodnight v. Bos. Sci. Corp.*, No. 18-62370-CIV, 2020 WL 6873737, at *12 (S.D. Fla. Nov. 23, 2020). Based on Salas' response in opposition, which requests, in the alternative, leave to amend in order to satisfy these pleading requirements [ECF No. 85, p. 16], it appears these steps were not taken here by Salas.

3

that Massachusetts law applies for punitive damages because it already recognized that Florida law applies to punitive damages, and (3) regardless, Florida law governs punitive damages because Massachusetts does not have a more-significant relationship to the issue of punitive damages than Florida, the forum state.

The Undersigned disagrees with Salas that BSC's motion is time-barred or that BSC is estopped from making its argument about punitive damages. However, the Undersigned agrees with Salas on the merits and finds that Florida has a more-significant relationship to the issue of punitive damages than Massachusetts.

### a. BSC's motion is not time-barred and BSC is not estopped from making its choice-of-law argument.

Salas argues that BSC's motion is a second motion for partial summary judgment (and because the deadline for dispositive motions has already expired, the motion is time barred). Salas is correct that the deadline for dispositive motions had long passed when BSC filed its motion. And Salas also correctly states that "ample case law supports the denial of motions for failure to comply with scheduling orders." [ECF No. 85, p. 5 (collecting cases)]. However, as Salas points out in her own response in opposition, "there is no 'definitive point by which a litigant must raise a choice-of-law argument,' a district court may reject a late-filed motion based on 'the case's own facts and equities.'" [ECF No. 85, pp. 2-3 (citing *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 72 (1st Cir. 2006))].

In fact, BSC cites a number of decisions finding that a choice of law motion is not required to be filed before the dispositive motions deadline. *See, e.g.*, *Hoffman v. L&M*

4

*Arts*, No. 3:10-CV-0953-D, 2013 WL 12284483, at *1 (N.D. Tex. Sept. 5, 2013) (emphasis added) ("Although substantive motions that raise choice of law issues *can* be filed under such rules as Fed. R. Civ. P. 12(b)(6), 12(c), and 56, such motions are made at the option of the movant. Choice of law is not a matter that must be presented by pretrial motion."); *Lologo v. Wal- Mart Stores, Inc.*, No. 2:13-CV-1493-GMN-PAL, 2016 WL 4162631, at *4 (D. Nev. Aug. 3, 2016) ("While the Court agrees with Plaintiffs that the choice-of-law issue ought to have been settled well in advance of trial, . . . the parties' collective failure to raise the issue does not foreclose its consideration."). *See generally Jaurequi v. John Deere Co.*, 986 F.2d 170, 173 (7th Cir. 1993) ("To preserve a choice-of-law issue for appeal, Jaurequi need only notify the court in a timely manner of the applicability of another state's law.").

Because there does not appear to be a specific deadline that applies to BSC's motion regarding choice of law for punitive damages, the Undersigned does not find BSC's motion to be time-barred in this case. The motion was filed with ample time before trial to allow the Court to rule on the motion.

Plaintiffs rely on United States District Court Judge Roy K. Altman's decision, *Goodnight v. Boston Scientific Corp.*, 18-CV-62370 (Nov. 23, 2020), to support their argument that BSC's motion here is untimely. [ECF No. 81-2]. There, BSC filed a motion regarding choice of law in a case involving similar facts (injuries sustained by a Florida resident after she was implanted in Florida with a defective BSC-made surgical mesh). *Id.*

5

Judge Altman determined that the motion was untimely and failed on the merits (discussed further later). *Id.*

The Undersigned finds the circumstances to be different here. There, BSC had already pushed for the application of Florida law to the punitive damages issue in earlier briefs (including in a previously-filed motion to bifurcate) and in proposed jury instructions. Here, by contrast, BSC did not previously address which state's punitive damages law applied before it filed its choice-of-law motion.

Further, unlike in *Goodnight*, BSC filed its motion to bifurcate after the motion for choice of law, which sought bifurcation only if the Court were to rule, over BSC's objection, that Florida law applied. And here, BSC filed its choice-of-law motion before filing the joint pretrial stipulation [ECF No. 70] and joint motions in limine [ECF No. 69], and before the proposed jury instructions were due (November 27, 2020). Thus, the Undersigned agrees with BSC that the "facts and equities" in this case are different from those in *Goodnight* and do not support a finding here that BSC's motion regarding punitive damages is time-barred. *See Levin*, 459 F.3d at 72.

Similarly, Salas argues that BSC should be "estopped" from raising a choice of law issue now because BSC "already recognized that Florida law applies to punitive damages" in its motion to bifurcate. [ECF No. 85, p. 8]. But this statement is incorrect. As discussed above, BSC filed its motion regarding choice of law before it filed its motion to bifurcate. In its motion to bifurcate, BSC states that it filed a separate choice of law motion

asking the Court to find that punitive damages are governed by Massachusetts law, but that if the Court were to deny the motion, BSC would ask the Court to bifurcate the amount of punitive damages from the rest of the trial. [ECF No. 67, p. 1]. Accordingly, the Undersigned does not find that BSC should be estopped from raising its choice-of-law argument.

### b. Florida Law Governs Salas' Punitive Damages Claim

In cases (like this one) under diversity jurisdiction, the Court applies the choice-of-law rules of the forum state. *See Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998). Thus, here, Florida's choice-of-law rules will determine which state's substantive law (Massachusetts or Florida) applies to Salas' claim for punitive damages.

Florida follows the "significant relationship test," found in the Restatement (Second) of Conflict of Laws §§ 145-46 (1971). *Goodnight v. Bos. Sci. Corp.*, No. 18-62370-CIV, 2020 WL 6873737, at *5 (S.D. Fla. Nov. 23, 2020); *see also Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980). "Under that test, the Court must: (1) 'identify the sovereigns with interests in applying their laws to the . . . dispute'; (2) determine whether there is a 'true conflict' between the laws of the interested jurisdictions; and, if there is a conflict, (3) 'determine which sovereign's interest is the most 'significant.'" *Goodnight*, 2020 WL 6873737, at *5 (citing *Salinero v. Johnson & Johnson*, 408 F. Supp. 3d 1354, 1356-57 (S.D. Fla. 2019)).

Here, looking at the first prong, the two states interested in the punitive damages issue are Massachusetts (where BSC is headquartered and where BSC says it make its decisions regarding design, labeling, marketing, and distribution of the mesh) and Florida (where Salas resides, where the surgical mesh was implanted, and where her injury occurred).

Second, the parties agree there is a true conflict here between the punitive damages laws of Florida and Massachusetts. Florida law allows punitive damages, subject to certain statutory limitations. *See* Fla. Stat. § 768.72-73. Massachusetts law, on the other hand, allows punitive damages only under limited circumstances that are expressly authorized by statute. *See Flesner v. Tech. Commc'ns Corp.*, 410 Mass. 805, 813 (1991).

In looking at the third prong -- which state's interest is the most significant -- the Restatement (Second) Conflict of Laws provides additional guidance:

> Section 6 of the Restatement (Second) lists the following factors as important choice of law considerations in all areas of law:
>
> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and

> (g) ease in the determination and application of the law to be applied.
>
> **s 145. The General Principle**
>
> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in s 6.
>
> (2) Contacts to be taken into account in applying the principles of s 6 to determine the law applicable to an issue include:
>
> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.
>
> **s 146. Personal Injuries**
>
> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in s 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

*Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980) (quoting Restatement (Second) Conflict of Laws ss 145-146 (1971)).

Accordingly, in this action for personal injuries, Florida law should apply here unless BSC can show that Massachusetts has a more-significant relationship to this case.

BSC points to the fact that it is headquartered in Massachusetts and made decisions regarding the faulty product in Massachusetts. However, this does not appear to be more significant to Florida's relationship to punitive damages here.

The § 145 factors favor Florida law here. Angela Salas was injured in Florida. Even though BSC argues that the alleged wrongdoing occurred in Massachusetts, BSC sold its product nationally, including in Florida, and received payment from Florida residents. BSC's presence in Florida was not fortuitous, it was purposeful and deliberate. Mr. and Mrs. Salas are residents of, and domiciled in, Florida. As it relates to the issue of punitive damages, the relationship between the parties is not centered in Massachusetts, but is centered in Florida, where BSC distributes products, where Salas was implanted with the BSC product, and where Salas allegedly suffered injury.

The applicable § 6 factors also do not suggest that Massachusetts has a more-significant relationship than Florida. "Under Florida law, the purpose of punitive damages is . . . to punish the defendant for its wrongful conduct and to deter similar misconduct by it and other actors in the future." *Eghnayem v. Bos. Sci. Corp.*, No. 2:13-CV-07965, 2014 WL 5386731, at *4 (S.D.W. Va. Oct. 21, 2014) (citing *Owens-Corning Fiberglass Corp. v. Ballard*, 749 So. 2d 483, 486 (Fla. 1999); *see also W.R. Grace & Co.--Conn. v. Waters*, 638 So. 2d 502, 504 (Fla. 1994) ("Punishment and deterrence are the policies underlying punitive damages."); *Eghnayem v. Bos. Sci. Corp.*, No. 2:13-CV-07965, 2014 WL 5386731, at

\*5 (S.D.W. Va. Oct. 21, 2014) ("[T]he State of Florida has a weighty interest in punishing tortfeasors who direct products to the Florida market that injure Floridians.").

BSC points out that, generally, states have an interest in protecting defendants from excessive liability. [ECF No. 89, p. 7, n. 7]; *see, e.g.*, *Computer Sys. Eng'g, Inc. v. Qantel Corp.*, 571 F. Supp. 1365, 1370 (D. Mass. 1983), *aff'd*, 740 F.2d 59 (1st Cir. 1984) ("The general rule in Massachusetts is that punitive damages may not be awarded unless expressly allowed by statute. States that disallow punitive damages generally do so, among other reasons, to protect defendants from excessive liability.").

That may be true, but BSC does not point to any authority to support that Massachusetts has a legitimate interest "in enforcing this policy outside of its borders." *Eghnayem*, 2014 WL 5386731, at \*4 (citing *Sanchez v. Bos. Sci. Corp.*, No. 12-cv-05762, 2014 WL 4059214, at \*10 (S.D.W. Va. Aug. 18, 2014)).

In *Eghnayem v. Boston Scientific Corp.*, Judge Goodwin considered this same question -- whether Massachusetts had a more-significant relationship than Florida on the issue of punitive damages. *Eghnayem*, 2014 WL 5386731, at \*4. There, just like here, Florida plaintiffs were implanted with BSC-made defective surgical mesh products in Florida and suffered their injuries in Florida. *Id.* BSC moved for summary judgment on the issue of punitive damages and asked the Court to find that Massachusetts law applied to bar punitive damages. *Id.* at \*1. Judge Goodwin disagreed, finding that:

> Massachusetts has no legitimate interest in applying its prohibition on punitive damages to injuries occurring outside of Massachusetts. BSC

11

> contends that Massachusetts has an interest in protecting its citizens from excessive financial liability. BSC is a Delaware Corporation with its principle place of business in Massachusetts. . . . BSC points to no Massachusetts legal authority supporting its proposition that Massachusetts has an interest in protecting its citizens from excessive liability, let alone liability for wrongs occurring outside of Massachusetts. Likewise, I am unable to locate any Massachusetts cases articulating the state's interest in prohibiting punitive damages at common law. . . Even assuming Massachusetts's punitive damages prohibition is based on a policy of shielding its residents from excessive liability, Massachusetts has no legitimate interest in enforcing this policy outside of its borders.

*Id.* at *4-5 (citing *Sanchez*, 2014 WL 4059214, at *10) (denying BSC's request to apply Massachusetts law on issue of punitive damages and instead applying California law); *see also Adams v. Bos. Sci. Corp.*, No. 2:12-CV-00932, 2015 WL 5882980, at *5 (S.D.W. Va. Oct. 7, 2015) (applying Restatement (Second) of Conflict of Laws and finding that Texas has more significant interest than Massachusetts on issue of punitive damages); *Hendricks v. Bos. Sci. Corp.*, 51 F. Supp. 3d 638, 642 (S.D.W. Va. 2014) (applying West Virginia law over Massachusetts law on issue of punitive damages).

More recently, in *Goodnight v. Boston Scientific Corp.*, No. 18-62370-CIV, 2020 WL 6873737 (S.D. Fla. Nov. 23, 2020), Judge Altman considered (as an alternative ruling, given that he denied the motion as untimely but then analyzed the merits anyway) this issue as well. Identical to this case, the plaintiff there was a resident of Florida, was implanted in Florida with a defective BSC-made surgical mesh, and sustained injuries in Florida. *Id.* at *1. BSC filed a motion regarding choice of law for punitive damages, arguing that Massachusetts law should apply to bar punitive damages. *Id.* Judge Altman

12

found Judge Goodwin's reasoning in *Eghnayem* to be persuasive and that "BSC has failed to show that Judge Goodwin's resolution of this same issue in *Eghnayem* was wrong." *Id.* at *15.

Further, Judge Altman found that BSC failed to explain Massachusetts' policy rationales for restricting punitive damages to limited circumstances that are expressly authorized by statute:

> BSC wholly fails to explain the policy rationales that underlie the Massachusetts rules it here asks the Court to enforce—rules like requiring punitive-damages plaintiffs (1) to assert a statutory (rather than a common-law) cause of action and (2) to send their adversaries a pre-suit demand letter. As the Restatement explains, "the interest of a state in having its tort rule applied in the determination of a particular issue will depend upon the purpose sought to be achieved by that rule and by the relation of the state to the occurrence and the parties." Restatement (Second) of Conflict of Laws § 145 cmt. c (emphasis added). But, as the Court's examples make plain, Massachusetts's rules don't impose either substantive prohibitions or liability caps on punitive damages; instead, they function as quasi-procedural rules that—at least on their face—neither protect nor punish anyone. So, without any Massachusetts authorities on point, this Court—like Judge Goodwin—cannot discern (nor should the Court be compelled to divine) the specific policy interests that the application of these two rules might advance.

*Id.* at *12.

Similarly, here, BSC cites to decisions which generally acknowledge that prohibitions on punitive damages are intended to protect defendants from excessive liability. *See* ECF Nos. 66, p. 4; 89, p. 7, n. 7. But BSC does not cite to authority explaining Massachusetts' specific policy interests for its statutory limitations on punitive damages.

13

BSC relies on *Salinero v. Johnson & Johnson*, 408 F. Supp. 3d 1354 (S.D. Fla. 2019) in support of its argument that Massachusetts has a more-significant interest as it relates to punitive damages. The plaintiff there was a Florida resident and was implanted with the Artisyn Mesh in Florida. *Id.* at 1357. The manufacturer defendant, Ethicon, argued that New Jersey had a greater interest in applying its laws because Ethicon is headquartered in New Jersey and its "corporate activities and decision-making as to the design, labeling, marketing, and distribution of Artisyn" took place there. *Id.* (internal citation omitted).

The Court found that New Jersey law should apply to plaintiff's punitive damages claim. In making that determination, the Court found that "punitive damages are meant to deter or punish misconduct, the state where the allegedly defective product was designed and manufactured—that is, New Jersey—has a superior interest here." *Id.* (citing *Krause v. Novartis Pharm. Corps.*, 926 F. Supp. 2d 1306, 1310 (N.D. Fla. 2013) (internal citation omitted) ("The express purpose of punitive damages in New Jersey is to punish the defendant and to deter that defendant from repeating such conduct.")); *see also Bellew v. Ethicon, Inc.*, No. 2:13-CV-22473, 2014 WL 6674433, at *2 (S.D.W. Va. Nov. 24, 2014) (citing Restatement (Second) of Conflict of Laws § 145 cmt. c (1971)) ("If the primary purpose of the tort rule involved is to deter or punish misconduct . . . the state where the conduct took place may be the state of dominant interest and thus that of most significant relationship.").

BSC asks the Court to find the rationale explained in *Salinero* controlling. However, as pointed out by Judge Altman in *Goodnight*:

> BSC relies on Massachusetts law to avoid the punishment of punitive damages altogether. *See* Motion at 8 ("[A]pplying Massachusetts law, punitive damages are not authorized in this case."). But, if BSC is right that the two Massachusetts rules at issue here were designed to punish and deter wrongdoing, an order granting BSC's Motion would significantly undermine, rather than advance, that general policy goal. In BSC's preferred scenario, after all, application of Massachusetts's rules would allow BSC to evade punishment (at least in the retributive sense contemplated by punitive damages). To deter and punish, however, one must (at least) leave open the possibility of punishment.

*Goodnight*, 2020 WL 6873737, at *15.

Further, as discussed in the decisions cited to by BSC, New Jersey, unlike Massachusetts, has evidenced a clear policy rationale for its punitive damages limitations, specifically on cases involving FDA-approved drugs. *See, e.g.*, *Dopson-Troutt v. Novartis Pharm. Corp.*, No. 8:06-CV-1708-T-24, 2013 WL 3808205, at *4 (M.D. Fla. July 22, 2013) (internal citation omitted) ("New Jersey has made a policy decision to preclude punitive damages in cases involving FDA-approved drugs and has the greater interest in regulating the conduct of a New Jersey business."); *Krause v. Novartis Pharm. Corps.*, 926 F. Supp. 2d 1306, 1311 (N.D. Fla. 2013) (internal citation omitted) ("It is significant that the New Jersey legislature made a deliberate decision to insulate New Jersey manufacturers from punitive damages after carefully balancing the need to protect individuals against the need to protect an industry with a significant relationship to the New Jersey economy and public health.").

BSC does not point to a single case holding that Massachusetts had a greater interest in punitive damages over the law of another state where the plaintiff both resided and was injured.

Accordingly, the Undersigned finds that Massachusetts does not have a stronger interest than Florida in applying its punitive damages law here.

### III. Conclusion

For the reasons discussed above, the Undersigned **respectfully recommends** that the District Court **deny** BSC's motion regarding choice of law and find that Florida law applies to punitive damages. Because the Undersigned is recommending that Florida law applies, Salas' request, in the alternative, for leave to amend her complaint to include a claim under Massachusetts General Law, Chapter 93A, § 9, should be **denied as moot**.

### IV. Objections

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Marcia G. Cooke. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue

covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on March 29, 2021.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Marcia G. Cooke
All Counsel of Record